**Robert HOSSIC, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 85–1790.

United States District Court, M.D. Pennsylvania.

June 5, 1987.

Frederick M. Stanczak, Susquehanna Legal Services, Williamsport, Pa., Robert C. Hauhart, Staff Atty., Prisoners Legal Services of New York, Plattsburgh, N.Y., for plaintiff.

Barbara L. Kosik, Asst. U.S. Atty., Scranton, Pa., for defendant.

## MEMORANDUM

RAMBO, District Judge.

### Procedural Background

On December 13, 1985, plaintiff Robert Hossic, a federal prisoner then confined to the United States Penitentiary, Lewisburg, Pennsylvania, with the assistance of counsel, instituted this civil action alleging negligence and asserting entitlement to monetary damages for injuries sustained as the result of an altercation with fellow inmates at U.S.P. Lewisburg. Jurisdiction is predicated upon 28 U.S.C.A. § 1346(a) (Supp. 1986). Institution of this civil action followed a timely presentment to and denial of the plaintiff's claim by the appropriate federal agency, pursuant to 28 U.S.C.A. § 2675(a) (1977).

On March 17, 1987, a non-jury trial on the issue of liability commenced and concluded before the court. In accordance with the provisions of Rule 50 of the Federal Rules of Civil Procedure, at the conclusion of the plaintiff's case, defendant moved for a directed verdict. This court declined, at the time, to grant the motion. The motion was renewed at the close of all evidence. The court directed that the motion for directed verdict be briefed by the parties. The motion is now ripe for disposition.

### Factual Background

On November 16, 1982, plaintiff was transferred to U.S.P. Lewisburg. Because Hossic was not permanently assigned to that prison, he was classified as a "holdover" and assigned to K–Dorm which is an open dormitory setting in which inmates are housed in double bunks on a temporary basis. Prior to his being placed in K–Dorm, Hossic was interviewed and evaluated to determine that he would be a suitable occupant for K–Dorm.

According to testimony presented at trial, on November 17, 1982, at approximately 7:00 a.m., plaintiff was assaulted in the shower area of K–Dorm by three unidentified inmates. The correctional officer on duty and in charge of the dormitory at the time was Albert Whitecavage. Thomas Bell, a physician's assistant, was also present in K–Dorm and observed the injured Hossic. However, neither Whitecavage nor Bell observed the assault on Hossic. There is evidence that Hossic received severe and permanent injuries.

### Discussion

It is plaintiff's position that the prison officials knew or should have known of a pervasive risk of danger to low-custody classification inmates housed in K–Dorm based on a history of overcrowding, understaffing, and assault in that dormitory. Under the Federal Tort Claims Act, 28 U.S. C. § 2671 et seq., the law of the place where an act or omission occurs is to be applied. 28 U.S.C.A. § 1346(b) (1977); Smith v. United States, 437 F.Supp. 1004, 1005 (E.D.Pa.1977). Thus, in determining whether the government owes a duty to plaintiff, whether the government breaches that duty, and whether plaintiff's injuries are the proximate cause of that breach, the

law of Pennsylvania ordinarily applies. *Mahler v. United States*, 196 F.Supp. 362, 364 (W.D.Pa.1961), *aff'd*, 306 F.2d 713, 715 (3d Cir.1962), *cert. denied*, 371 U.S. 923, 83 S.Ct. 290, 9 L.Ed.2d 231 (1962). However, 18 U.S.C.A. § 4042 (1979) governs the government's duty of care in a situation involving federal prisoners. The duty of care as provided by 18 U.S.C.A. § 4042 (1979) is that of ordinary diligence to keep prisoners safe from harm. As stated by the Fifth Circuit Court of Appeals, "[t]he Government is not an insurer of the safety of a prisoner." *Jones v. U.S.*, 534 F.2d 53, 54 (5th Cir.1976), *cert. denied*, 429 U.S. 978, 97 S.Ct. 487, 50 L.Ed.2d 586 (1976).

With respect to the burden of proof and quantum of proof in actions under the Federal Tort Claims Act, the governing law is that of the state in which the tortious conduct took place. *Baum v. United States*, 541 F.Supp. 1349, 1351 (M.D.Pa.1982). Pennsylvania law requires a preponderance of the evidence in favor of plaintiff's basic propositions. *Id.; Vlases v. Montgomery Ward & Co.*, 377 F.2d 846, 851 (3d Cir. 1967).

Plaintiff attempts to argue in support of his theory of defendant's negligence in two ways. Plaintiff argues that plaintiff's Exhibits 85 and 86 show that on October 2 and October 7, 1981 respectively there was a fight and reports of threatened violence in K–Dorm. Plaintiff argues (1) that these incidents placed the defendant on notice that incidents of violence were not unusual for K–Dorm, and (2) that the officials should have either reduced the population or added more security officers to K–Dorm.

As stated by the district court in the Southern District of New York, "[i]n the discharge of the government's duty to prison inmates, it must 'exercise ordinary care in (1) the classification of prisoners and (2) the custody of prisoners properly classified.'" *Muniz v. United States*, 280 F.Supp. 542, 546 (S.D.N.Y.1968) (quoting *Cohen v. U.S.*, 252 F.Supp. 679, 688 (N.D. Ga.1966)). Plaintiff raises no issue that he was not properly classified or that his assailants were not properly classified. There was a suggestion that the classifica-

tion procedure may have been perfunctory. However, plaintiff has not sufficiently shown that either he or his assailants were not proper candidates for K–Dorm.

The duty imposed upon a jailer vis a vis his prisoner is "to exercise reasonable care and diligence to protect the prisoner from danger, known to or which might reasonably be apprehended by him." *Id.* at 547. Plaintiff argues that the incidents in K–Dorm on October 7, 1981 and October 2, 1981 were sufficient to put defendant on notice that plaintiff was in danger of potentially being assaulted. Regarding the October 7, 1981 incident, apparently the assaultive prisoner was removed from K–Dorm. Exhibit 85. The rest of the exhibit is unintelligible. Regarding the October 2, 1981 incident, apparently the K–Dorm orderly filed a complaint that someone was trying to pick a fight with him. There is no record that incidents of assaultive behavior in K–Dorm were unusual or sufficient in number to present probable hazards to the inmates in general or to plaintiff specifically. *See Jones v. United States*, 534 F.2d at 54.

Plaintiff also argues that the defendant was on notice prior to the attack on Hossic that such an attack was likely to occur in light of the fact that the dorm was overcrowded and that only one staff member was assigned to monitor sixty inmates. Plaintiff's witness Major John D. Case, a corrections consultant, testified as to his observations, opinions and conclusions regarding the conditions of K–Dorm in November, 1982. Major Case also testified that K–Dorm was not in compliance with Section 2–4131 of the American Correctional Association Standards for Adult Correctional Institutions (ACAS). According to this standard, K–Dorm was overcrowded in that the population exceeded fifty inmates and lacked the minimum living space per inmate. However, these standards are not binding. Further, plaintiff presented no evidence that any Bureau of Prisons standard was violated. Violation of a standard such as ACAS does not make one negligent per se, however it is a factor to be considered. *Smith v. Hobart Manufacturing Co.*, 194 F.Supp. 530, 533 (E.D.Pa.1961),

*rev'd on other grounds*, 302 F.2d 570 (3d Cir.1962).

 Assuming for purposes of argument that the conditions which existed in K–Dorm amounted to negligence, plaintiff must still prove by a preponderance of the evidence that the condition of overcrowding and/or the insufficient number of guards proximately caused plaintiff's injury. Proximate cause in Pennsylvania is that cause which was a substantial factor in bringing about the injury. Restatement (Second) of Torts § 431(a) (1965); *Whitner v. Von Hintz*, 437 Pa. 448, 263 A.2d 889 (1970). In this regard plaintiff's expert, Major Case, opined that there was the likelihood that an additional staff member would have prevented the assault upon plaintiff. However, the weight to be accorded expert testimony is for the trier of fact. Furthermore, the opinion of an expert has value only when the facts upon which it is based are accepted and when it is based on sound reason and judgment. *Haddigan v. Harkins*, 441 F.2d 844 (3d Cir.1970).

Major Case concludes that one corrections officer could not adequately monitor K–Dorm based on the factors of (1) the number of inmates; (2) that there existed various obstructions to viewing; and (3) that the design of the shower room was defective. There is no factual basis to conclude that two correctional officers would have prevented the assault any more than one correctional officer. In fact, Major Case testified that there are no set standards with respect to the ratio of officers to inmates because there are too many variables involved in making that determination. Furthermore, the assault took place in the shower. To support Major Case's conclusion that one more guard would have prevented the assault would have required the placement of one guard at the shower/bathroom entrance at all times. This situation would make the government an insurer of a prisoner's safety, which is a standard that is not required.

Considering the facts of this assault, it is sheer speculation to conclusively say that two guards would have prevented plain-tiff's injury. The plaintiff has not met the burden of proof by a preponderance of the evidence. Therefore this court must grant defendant's motion for directed verdict. An appropriate order will issue.